

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2004

# USA v. Thomas

Precedential or Non-Precedential: Precedential

Docket No. 02-3840

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Thomas" (2004). *2004 Decisions.* Paper 970.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/970

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 2, 2004

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-3840

———————

UNITED STATES OF AMERICA

v.

VICTOR DARNELL THOMAS,
                                        *Appellant*

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 01-cr-00005J)
District Judge: Hon. D. Brooks Smith

———————

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2004

Before: SLOVITER, RENDELL and ALDISERT,
                    *Circuit Judges*

(Filed February 2, 2004)

———————

Shelley Stark
 Federal Public Defender
Karen Sirianni Gerlach
 Assistant Federal Public Defender
 Counsel of Record
Pittsburgh, PA 15222

   Attorneys for Appellant

Mary Beth Buchanan
 United States Attorney
Christine A. Sanner
 Assistant United States Attorney
Bonnie R. Schlueter
 Assistant United States Attorney
Pittsburgh, PA 15219

Attorneys for Appellee

## OPINION OF THE COURT

SLOVITER, *Circuit Judge.*

Victor Darnell Thomas appeals from the judgment of conviction for possession with intent to distribute in excess of five grams of cocaine base or crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He raises two issues. First, he argues that the District Court deprived him of his Sixth Amendment right to counsel when it directed him to proceed *pro se* without conducting an adequate colloquy after it found that Thomas had waived and forfeited his right to counsel. Second, Thomas argues that the District Court committed plain error by failing to grant defense witness immunity *sua sponte* to two witnesses who Thomas believed could offer exculpatory evidence but who refused to testify based on the Fifth Amendment.

### I.

Thomas was stopped by Pennsylvania State Troopers following a confidential tip that he would be carrying illegal drugs in his car console or glove compartment. When Thomas refused to consent to a police search of the car, he was permitted to leave but his car was impounded until the police obtained a search warrant. After the police obtained a search warrant, they found two bags of crack and powder cocaine behind the glove box of Thomas' car, which led to his indictment.

On June 4, 2001, William Difenderfer entered his appearance for defendant. After representing Thomas in a detention hearing, he moved to withdraw, citing non-payment of his fees. Thomas opposed Difenderfer's motion, but "questioned" his "professionalism and Federal experience." App. at 54. The District Court granted Difenderfer's motion to withdraw.

The District Court appointed Public Defender Marketa Sims as Thomas' second counsel on July 17, 2001. Sims filed several motions on Thomas' behalf, but moved to withdraw in November because of a "breakdown of communications" and because "she no longer ha[d] the trust and confidence of her client." App. at 69. At the hearing on November 26, 2001, Thomas requested new counsel, and the District Court granted Sims' motion to withdraw.

The District Court next appointed Bruce Antkowiak as Thomas' third counsel. Following Antkowiak's motion for a continuance, the District Court re-scheduled Thomas' trial for March 18, 2002. On January 28, 2002, Antkowiak moved to withdraw based on "a breakdown in communications" with Thomas. App. at 80. The District Court held a hearing on the motion on February 6, 2002. At the hearing, Antkowiak described "one or more acrimonious exchanges" that culminated in Thomas' unwillingness "to speak and discuss matters critical to the case." App. at 89-90. Thomas testified that he couldn't get along with this counsel, but wasn't "saying that [he wouldn't] get along with all [his] attorneys" and asked for the appointment of another. App. at 94. The court responded, "I want it clear to you there is no guarantee you're going to get another attorney." App. at 94. It explained that a "lawyer's obligations do not stretch to sharing with you every bit of his work product or her work product." App. at 99. Although the court granted the motion to withdraw, it noted that the broken attorney-client relationship was, in part, the product of the defendant's unreasonable expectations regarding the role of his attorney and the defendant's refusal to cooperate with counsel when those expectations are not fulfilled.

The District Court appointed Arthur McQuillen as Thomas' fourth counsel, but reiterated that a defendant can, under certain circumstances, be deemed to have waived his Sixth Amendment right based upon his conduct. At a hearing conducted February 19, 2002, the District Court repeatedly explained to Thomas the nature and extent of his right to counsel, the attorney's obligation to accommodate all "reasonable requests" from Thomas, but that unreasonable demands "may constitute what the law considers misconduct by the Defendant client" and that such misconduct "may constitute a waiver of [his] right to counsel." App. at 125-26. The Court reminded Thomas he was not entitled to an attorney who would docilely take orders from Thomas or share his precise view of the appropriate case strategy.

Thomas initially stated that he did not understand the concept of waiver, despite the court's first explanation. The District Court again undertook to explain that unreasonable demands upon counsel could lead to a waiver of his right to counsel:

> Court: . . . if you have a case where there have been repetitive terminations of counsel and the Court can conclude that there is misconduct on the part of a client/defendant then that misconduct may be construed as a waiver of this 6th Amendment right to counsel with the implications being then that you would have to represent yourself?

> Thomas: Yes, Your Honor.

App. at 127-28. The District Court further explained that if Thomas were found to have waived his right to counsel by conduct, Thomas could be forced to proceed *pro se* at trial and could face a range of penalties. The court underscored the substantial difficulty Thomas might face in complying with the Federal Rules of Procedure and conducting a defense without legal training or knowledge. Following the hearing, Thomas' trial was continued until May 13, 2002 to permit McQuillen time to prepare Thomas' defense and collaborate with the court-appointed investigator.

On April 15, 2002, McQuillen moved to withdraw as counsel for Thomas, citing Thomas' alleged request that he

do so. At an April 17, 2002 hearing, Thomas denied requesting that McQuillen withdraw, but did not object to his withdrawal. McQuillen stated that after he informed Thomas that the case file did not contain a list of potential witnesses or an overview of the facts, Thomas refused to furnish these materials. Thomas instead insisted that McQuillen file a second motion to suppress after the court already denied the first one, pursue an Interstate Agreement on Detainers Act argument McQuillen found to be baseless, and defend Thomas in state proceedings beyond McQuillen's appointment.

On a April 9, 2002 visit to Thomas' prison, Thomas tore up a letter from McQuillen explaining the possible sentencing guidelines that Thomas might face. McQuillen and Thomas became angry with another and began yelling, until Thomas said, "Let's stop this before we get into a physical confrontation." App. at 163. In a subsequent telephone conversation, Thomas requested that McQuillen come to the prison, but McQuillen refused; Thomas screamed, "Why don't you withdraw from the case?" and hung up. App. at 151. McQuillen then filed to withdraw as Thomas' counsel.

On April 19, 2002, the District Court granted McQuillen's motion to withdraw and concluded that Thomas had forfeited or, in the alternative, waived his Sixth Amendment right to counsel by his continued misconduct. In its April 19, 2002 Memorandum Opinion, the District Court stated:

> When Thomas' previous defense counsel, Attorney Antkowiak, filed his motion to withdraw, I believed that Thomas might be engaging in dilatory tactics to delay trial. For that reason, at the time I appointed Attorney McQuillen to represent Thomas, I held a hearing at which I warned Thomas that his refusal to cooperate with defense counsel would result in the waiver of his Sixth Amendment right. As I explained above, I unequivocally warned Thomas of the difficulties he would face if he proceeded *pro se*, the procedural requirements with which he would have to comply, the nature of the charges against him, and the possible range of punishments that could be imposed upon him. More importantly, I explained that he could not

> make unreasonable demands upon his defense counsel, and that if he continued to do so, or otherwise refused to cooperate reasonably with his court-appointed counsel, I would treat his conduct as an implied request to proceed *pro se.* Most importantly, Thomas told me at the hearing on February 19, 2002, that he understood the possibility that his Sixth Amendment right to counsel could be waived by his conduct. Thomas further reiterated his understanding of that possibility at the most recent hearing held on April 17, 2002. . . . Thomas acknowledg[ed] that "if there's a conflict on my part, that this Court does not have to appoint me a further court-appointed counsel." Furthermore, I sent a copy of my earlier opinion discussing the possibility of a waiver by conduct to Thomas at the Cambria County Prison. . . . [T]here can be no doubt that Thomas understood what was at stake when he decided whether or not to cooperate with his defense counsel in a reasonable manner.

App. at 16 (internal citations omitted). The court then noted that Thomas engaged in the type of misconduct that the court "warned him could constitute a waiver by conduct of his Sixth Amendment right to counsel." App. at 17. The court interpreted Thomas' actions as "as a request to represent himself at trial, with full knowledge of the risks and difficulties he will confront *pro se.*" App. at 18.

On April 24, 2002, the court appointed Russell Heiple as standby counsel for Thomas' trial. Less than two months after Heiple was appointed and a few weeks before Thomas' trial was scheduled to begin, Thomas attempted to remove him as standby counsel. The District Court denied Thomas' motion.

Prior to trial, Thomas attempted to subpoena James Stager, the car dealer who sold Thomas his car, and his assistant, Patty Kapustka. Both Stager and Kapustka invoked the Fifth Amendment and refused to testify. During closing arguments, however, Thomas accused them of planting the drugs in his car. Thomas alleged that 1) Stager had possession of the car four days prior to its seizure by the police, 2) Stager planted the drugs during that time,

and 3) Kapustka removed Thomas' wife's name from the car title.

Thomas was convicted by a jury on both counts and was sentenced to an imprisonment term of 210 months and a $20,000 fine.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over Thomas' argument that the District Court violated his Sixth Amendment right to counsel. *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998). We review the District Court's failure to grant two defense witnesses immunity *sua sponte* for plain error. Fed. R. Crim. P. 52(b).

*A. Sixth Amendment Right to Counsel: Forfeiture and Waiver*

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment, however, is not absolute. A defendant may lose his or her right to counsel through forfeiture or waiver. *Leggett*, 162 F.3d at 249.

As the District Court properly noted, forfeiture and waiver are separate, distinct concepts. Waiver involves the "intentional and voluntary relinquishment of a known right." *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). Waiver of the right to counsel must be knowing, voluntary and intelligent. *United States v. Salemo*, 61 F.3d 214, 218 (3d Cir. 1995). It is clear from the Supreme Court's decision in *Farretta v. California*, 422 U.S. 806, 835 (1975), and this court's decision in *United States v. Welty*, 674 F.2d 185, 188 (3d Cir. 1982), that the district court must undertake an affirmative on-the-record colloquy to explain to the defendant the possibility of waiver and give the defendant "an awareness of the dangers and disadvantages inherent in defending oneself." *Welty*, 674 F.2d at 188. A "defendant's waiver of counsel can be deemed effective only where the district court judge has

made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary." *Id.* at 189.

Although waiver most commonly is effected by an "affirmative, verbal request" to proceed *pro se*, waiver also may be effected by conduct. *Goldberg*, 67 F.3d at 1099. If the district court has warned the defendant that he will lose his attorney if he engages in dilatory misconduct, "any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." *Id.* at 1100.

By contrast, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Id.* at 1100. A court may find that a defendant has forfeited his or her right to counsel after having engaged in "extremely dilatory conduct" or "extremely serious misconduct." *Id.* at 1101, 1102. Forfeiture can be found "regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*." *Id.* at 1101. In *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995), the court found forfeiture based on a defendant's verbal abusiveness, threats to harm an attorney, and attempts to make an attorney engage in unethical activities. We have cited *McLeod* approvingly in *Leggett*, 162 F.3d at 250, and *Goldberg*, 67 F.3d at 1100.

With respect to forfeiture, Thomas argues that the District Court erred in holding that he threatened his attorney and engaged in "extremely serious misconduct." The District Court did not err in concluding that Thomas' statement — that Thomas and McQuillen should stop yelling at one another before they became involved in a "physical confrontation" — constituted a threat. Moreover, the District Court did not rely *solely* on Thomas' threat in finding forfeiture. Indeed, the District Court also emphasized that Thomas had been verbally abusive to McQuillen, tore up his correspondence, refused to cooperate in producing a witness list, and hung up on him during a telephone conversation. Further, Thomas attempted to force McQuillen to file several meritless,

frivolous claims, such as ones regarding the Interstate Detainers Act and suppression. Perhaps most critically, Thomas engaged in this sort of misconduct not once, but in relationships with four attorneys. The District Court properly found that Thomas forfeited his right to counsel.

The District Court also found, in the alternative, that Thomas' continued unreasonable demands and conduct toward his counsel constituted a waiver of counsel. Thomas' challenge to the District Court's waiver finding is three-fold. First, Thomas emphasizes that he did not waive his right to counsel because he "continually asserted a desire for counsel." Appellant's Br. at 31. Thomas' continued desire for counsel, however, is irrelevant. As this court has stated previously, waiver by conduct nonetheless may apply, "regardless of whether the defendant affirmatively wishes to part with that right." *Goldberg*, 67 F.3d at 1101 (describing waiver by conduct despite defendants "vehement[] object[ions] to being forced to proceed *pro se*").

Second, Thomas argues that the District Court's colloquy on the dangers of *pro se* representation was "ineffective" because it was conducted "long before" the District Court ordered Thomas to proceed *pro se*. Appellant's Br. at 31-32. Thomas' suggestion that the District Court should have timed the *Farretta/Welty* colloquy on the eve of counsel's motion to withdraw is a novel one unsupported by case law. *See Goldberg*, 67 F.3d at 1100 ("Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, *any misconduct thereafter* may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.") (citations omitted) (emphasis added). The purpose of a *Farretta/Welty* colloquy is to provide the defendant with notice that continued misconduct may result in the waiver of one's right to counsel; thus, we focus on whether Thomas was warned of the possible consequences, not whether the warning immediately preceded the District Court's order that the defendant must proceed *pro se*. Moreover, the District Court's February 2002 warning colloquy was undertaken on the heels of McQuillen's appointment as counsel; thus, the clear implication of the District Court's warning was

that if Thomas continued to engage in misconduct with McQuillen, his misconduct would be interpreted as a waiver of counsel.

Lastly, Thomas alleges that the colloquy was ineffective because he did not understand its implications. Thomas' assertion is not supported by the record evidence. The District Court explained to Thomas, and Thomas represented that he understood the nature of the charges against him, the range of punishments that he might face, and the possibility that continued misconduct could annul his right to counsel. The District Court also explained that self-representation "is very difficult and imposes numerous obstacles," such as conformance with the Federal Rules of Criminal Procedure and Evidence and the detriment a non-lawyer would face based on his "lack of knowledge of [ ] substantive law" and his "dual role" as both attorney and defendant. App. at 132-33. These admonitions track the problematic aspects of proceeding *pro se* that we referred to as examples of what a court should discuss with a potential *pro se* defendant in *Welty*, 674 F.2d at 188, and that we cited with approval thereafter in *United States v. Stubbs*, 281 F.3d 109, 118 (3d Cir. 2002). After the District Court mentioned these potential difficulties, Thomas represented that he understood. Nothing in the record suggests otherwise and this court finds no reason to look behind Thomas' proffered understanding.

Thomas also argues that the colloquy was constitutionally insufficient because the District Court failed to instruct him on defenses or mitigating circumstances. Indeed, *Welty* states that "a defendant's waiver must be made with an apprehension of . . . possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." 674 F.2d at 188-89 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion)). However, that language has been interpreted as listing illustrative examples of factors that courts might discuss, not a mandatory checklist of required topics. As this court has explained:

> These examples of what a trial court should say were never intended to serve as a rote dialogue, in the

> absence of which, a defendant's waiver of counsel would be *per se* invalid. While it is unquestionable that a colloquy between the defendant and trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent, we have explicitly declined to require a detailed list of advice such as that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. *Welty*, 674 F.2d at 189. Rather, the proper measurement of the effectiveness of a defendant's waiver of counsel is whether the district court judge has made "a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary." *Id.*

*Gov't of Virgin Islands v. James*, 934 F.2d 468, 473-74 (3d Cir. 1991); *see also Gov't of Virgin Islands v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995) ("There is no rote speech that the court must recite."); *United States v. Salemo*, 61 F.3d at 220 ("We have not previously, nor do we now, require a rote dialogue" for a *Welty/Farretta* colloquy). Although in our opinion in *United States v. Peppers*, 302 F.3d 120, 127-37 (3d Cir. 2002), we listed a series of questions that we believe would provide a "useful framework" in order to ascertain whether a defendant understands the risks of proceeding *pro se*, we did not overrule our previous discussion, nor did we mandate a certain "script," especially in situations where we were confident that the defendant was cognizant of the potential problems he would face. This is such a situation. We note, also, that our opinion in *Peppers* was issued after the events that occurred here, and the District Court's discussion with Thomas that included the points referred to in *Welty* and *Stubbs* was in accordance with Third Circuit precedent.

We have, however, held that the district court must address the ranges of punishments to which the defendant may be exposed at trial. *See, e.g., United States v. Moskovits*, 86 F.3d 1303, 1308 (3d Cir. 1996). In this case, the District Court did describe the potential sentences Thomas faced, and Thomas does not argue to the contrary.

After review of the record, we conclude that the District Court properly held that Thomas understood the concept of waiver by conduct and Thomas' waiver was valid.

*B. Defense Witness Immunity*

Thomas alleges that his central theory of the case was that Stager planted the drugs in his car and Kapustka altered Thomas' car title to reflect his name alone. Although Thomas attempted to call James Stager and Patty Kapustka as witnesses, they both invoked the Fifth Amendment. Thomas testified that Stager was "curbstoning": selling cars to Thomas for low prices so that the cars could be accounted for during monthly bank audits. Thomas testified that his car was on Stager's lot for a bank audit the day before his car was stopped by the police and that Stager planted the drugs during that period.

Thomas alleges that without Stager and Kapustka's testimony he was unable to present his theory of defense. Had the District Court informed him that they could have been immunized, Thomas would have pursued this avenue of inquiry.

Courts have the inherent authority to immunize a witness capable of providing exculpatory evidence, but "the opportunities for judicial use of this immunity power must be clearly limited." *Gov't of Virgin Islands v. Smith*, 615 F.2d 964, 972 (3d Cir. 1980). In order to obtain defense witness immunity, several conditions apply: immunity must be properly sought in district court; the defense witness must be available to testify; the proffered testimony must be clearly exculpatory and essential; and there must be no strong governmental interests which countervail against a grant of immunity. *Id.*

Although *Smith* requires that the immunity must be properly sought in district court, Thomas suggests that he should be excused from this requirement because he would have sought immunity had he known of it. Thomas claims that the court plainly erred by failing to alert him of the possibility of defense witness immunity.

Thomas cites no case law suggesting that the district court must raise the issue of defense witness immunity *sua sponte*, whether for a *pro se* defendant or one represented by counsel. The district court must remain a fact-finder that should not assume the role of advocate by directing the defendant to pursue particular lines of strategy or

defense. If Thomas believed that Stager and Kapustka's testimony was critical to his defense, he should have consulted with the standby counsel appointed by the court. Given Thomas' failure to avail himself of the resources offered by the court-appointed standby counsel, the District Court did not err by failing to grant defense witness immunity *sua sponte*.

Moreover, even if Thomas had raised the issue in the District Court, Thomas could not have met the test outlined in *Smith* because the witnesses' testimony would not have been "clearly exculpatory." As we stated in *United States v. Ammar*, 714 F.2d 238, 251 n.8 (3d Cir. 1983), judicial immunity is properly denied where the exculpatory nature of the proffered testimony is "at best speculative." Even if Stager and Kapustka admitted to having been involved in illegal "curbstoning," at least two other witnesses offered testimony that undercut Thomas' theory that Stager planted drugs in his car. Thomas' girlfriend, Heather Barr, testified that after Thomas' car was impounded Thomas told her that he already knew that drugs were in his car. Also, Barr stated that Thomas attempted to remove the drugs from his car in the police impoundment and fled to State College in order to avert being arrested when the police found the drugs. In addition, Glenda Ritchick, Stager's office manager and bookkeeper, testified that Thomas' car was not on Stager's car lot during the February 26, 2001 bank audit, a day before Thomas' vehicle was seized by the police. Barr and Ritchick's testimony thus undermine Thomas' defense of having no knowledge that there were drugs in his car and believing that Stager planted the drugs during the bank audit. Because a credibility determination would have been required in order to determine which parties were more credible, Stager and Kapustka's testimony would not have been "clearly exculpatory," as required under *Smith*. The District Court did not clearly err in failing to grant defense witness immunity to Stager and Kapustka.

We will affirm the judgment of the District Court.

14

A True Copy:
         Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*