NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2997

UNITED STATES OF AMERICA

v.

CURT D. KOSOW,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cr-00228)
District Judge: Honorable Arthur J. Schwab

Submitted Under Third Circuit LAR 34.1(a)
October 19, 2010

Before: HARDIMAN, GREENAWAY, JR. and NYGAARD, *Circuit Judges.*

(Filed: November 10, 2010)

OPINION OF THE COURT

HARDIMAN, *Circuit Judge*.

A jury convicted Curt Kosow of eight counts of various tax-related offenses.

Kosow appeals his judgment of conviction, claiming that the District Court erred when it

forced him to proceed to trial *pro se* after holding that Kosow had waived by conduct his Sixth Amendment right to an attorney. We will affirm.

## I.

The facts of Kosow's underlying offenses are not relevant to the instant appeal. Because we write for the parties, who are familiar with the procedural history of the case, we will recount only the facts necessary for our analysis.

The District Court concluded that Kosow waived his right to counsel by repeatedly hiring and firing attorneys, and by failing in the months leading up to his trial to either retain yet another private attorney or to submit documentation establishing his eligibility for a court-appointed attorney. More specifically, the District Court found that Kosow was attempting to delay his trial by repeatedly hiring new attorneys, who would request and receive a continuance of the trial date in order to become familiar with the evidence in the case. Shortly thereafter, Kosow would fire the attorney and hire another one, restarting the entire process and delaying the trial further.

In the course of granting multiple continuances of Kosow's trial date to accommodate new counsel, the District Court repeatedly warned Kosow that such continuances would not be granted indefinitely, that his serial firings of attorneys amounted to a waiver of his right to counsel, and that it was Kosow's responsibility to obtain private counsel or establish his eligibility for appointed counsel far enough in advance of the trial date to permit adequate preparation. Kosow failed to do either, filing

2

a financial affidavit in support of a request for appointed counsel only a week before his trial date. Realizing that appointing a lawyer to represent Kosow would result in another substantial delay, the District Court denied his request and instead appointed standby counsel to assist Kosow in proceeding *pro se*.

The jury convicted Kosow on eight of nine counts, and he now appeals, claiming that the District Court erred in finding that he waived by conduct his right to an attorney.[1]

## II.

We cautioned long ago that "[o]nce a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995) (citations omitted). Because "it is tantamount to a claim of an ineffective waiver of a constitutional right," when a defendant complains that a district court has improperly found waiver by conduct, we engage in *de novo* review. *Id.* at 1097.

"The Supreme Court has made clear that a waiver of the right to counsel must be knowing, voluntary and intelligent." *Id.* at 1100 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Thus, "to the extent that the defendant's actions are examined under the doctrine of 'waiver,'"—including waiver by conduct—"there can be no valid waiver of

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

the Sixth Amendment right to counsel unless the defendant also receives *Faretta* warnings." *Goldberg*, 67 F.3d at 1100.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court made clear that a defendant choosing to represent himself "need not himself have the skill and experience of a lawyer," but "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (citations omitted) (internal quotation marks omitted). We have stated that "there is no talismanic formula" for a *Faretta* inquiry, but have nevertheless articulated fourteen questions as a "useful framework" for such colloquies. *United States v. Peppers*, 302 F.3d 120, 135-37 (3d. Cir. 2002). These questions are intended to gauge a defendant's understanding of the challenges and risks involved in representing himself *pro se*, and inquire into such areas as his familiarity with the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the nature of the crimes he is charged with, the possible penalties he faces, and the fact that an attorney would be more skilled in identifying defenses, presenting evidence, and generally litigating the case.

Here, after Kosow's third post-indictment attorney withdrew, the District Court noted that no other attorney had appeared, and that Kosow would therefore be representing himself. The District Court further warned Kosow that his trial date would not be postponed again, and that his failure to retain a new attorney in a timely fashion

4

would require him to proceed *pro se*. The District Court then asked Kosow almost all of the fourteen *Peppers* questions, omitting only an inquiry whether Kosow understood that, if convicted, he could be sentenced consecutively on each of the charges.[2] Kosow's answers revealed that, although he had not immersed himself in the law governing his case and trial, he was generally aware of its existence and understood the need to familiarize himself with it. Moreover, his answers demonstrate an awareness of the advantages of proceeding with an attorney. We find this substantial compliance with *Peppers* to be more than adequate to satisfy *Faretta* and *Goldberg*.

Kosow argues that the District Court erred by not explaining the purpose of the colloquy to him. Even assuming *arguendo* that this was required, the District Court plainly stated at the beginning of the colloquy that "I have a couple questions to ask you relating to your representing yourself." App. 97.

Kosow also complains that when, during the colloquy, he stated that he was seeing a psychiatrist, the Court did not inquire as to the reasons for these visits. We agree that a more thorough examination of this issue would have been desirable. Nevertheless, our review of the record leads us to conclude that Kosow's responses to the District Court's questions were lucid and manifested full comprehension of what the District Court was

---

[2] In *Peppers* we suggested that a court ask a defendant whether he has previously represented himself in a criminal action. *Id.* at 136. The District Court here asked Kosow whether he had ever seen a federal trial or sentencing hearing. On the facts of this case, we find this to be an acceptable substitution.

saying. More importantly, the District Court later revisited the issue of Kosow's mental state, obtaining a psychological examination of Kosow and holding a full hearing on the topic before concluding in a written opinion that Kosow was competent both to stand trial and to represent himself. Accordingly, the District Court did not commit reversible error when it failed initially to inquire about Kosow's psychiatric treatment.

When, as part of the *Peppers* colloquy, the District Court urged Kosow not to represent himself, Kosow replied, "I appreciate it, and hopefully I won't represent myself for a long period of time." App. 122-23. But Kosow never retained another private attorney to enter a general appearance in the case,[3] and did not attempt to demonstrate his eligibility for an appointed lawyer until approximately a week before trial. Having been duly warned of the consequences of dilatory and vexatious actions, Kosow cannot now complain of having to suffer them.

### III.

Kosow contends that his conduct following the District Court's issuance of the *Faretta* warnings was not so outrageous or dilatory as to constitute a "forfeiture" of his right to counsel. He cites *Goldberg* for the proposition that a defendant can forfeit his right to an attorney only through "extremely dilatory conduct," *id.* at 1101, or "extremely

---

[3] Kosow did retain private counsel solely to defend him in bond revocation proceedings. At the bond revocation hearing, this attorney informed the court that he hoped to enter a general appearance, "but there's just a few matters I need to take care of in the interim." Supp. App. 210. No general appearance was ever entered, despite Kosow's later insistence that this attorney should be required to represent him.

serious misconduct," *id.* at 1102. But as the Government points out, in *Goldberg*, we carefully distinguished between pure forfeiture, which "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right," and "waiver by conduct," which "combines elements of waiver and forfeiture" and is brought about by a defendant's conduct only after the defendant has been warned that such conduct will result in the loss of his Sixth Amendment rights. *Id.* at 1100. Because Kosow was so warned, "a 'waiver by conduct' could be based on conduct less severe than that sufficient to warrant a forfeiture." *Id.* at 1101. The District Court explicitly found that waiver by conduct, and not pure forfeiture, applied in Kosow's case.

Kosow's conduct is similar to that of the defendant in *United States v. Thomas*, 357 F.3d 357 (3d Cir. 2004), in which we affirmed a District Court's finding of waiver by conduct. There, the defendant received, and fired or alienated, four consecutive appointed attorneys. *Id.* at 359-62. On allowing the third attorney to withdraw and appointing the fourth, the district court explained to Thomas that making any further "unreasonable demands" of his attorneys "may constitute a waiver of [his] right to counsel." *Id.* at 360 (alteration in original) (citation omitted) (internal quotation marks omitted). After Thomas had a falling out with his fourth attorney, "[t]he court interpreted Thomas' actions as . . . a request to represent himself at trial, with full knowledge of the risks and difficulties he will confront *pro se.*" *Id.* at 361 (citation omitted) (internal

7

quotation marks omitted). We concluded that Thomas's misconduct rose not only to the level of waiver by conduct, but also to the higher level required for outright forfeiture of his attorney.

Like Thomas, Kosow fired or alienated a long succession of lawyers—two after he had been warned by the District Court that he would waive his right to counsel upon repeated misconduct, and several more before.[4] Although Kosow requested court-appointed counsel on May 9, 2007, he waited until five days before trial to file the necessary paperwork to attain one. We have no hesitation in holding this misconduct severe enough to establish waiver by conduct.

We will affirm the judgment of the District Court.

---

[4] Kosow maintains that the District Court was not aware of his pre-indictment parade of attorneys, and that in any event they did not delay the proceedings. But when Kosow fired his first post-indictment attorney, the Government informed the court that prior to the indictment, "Mr. Kosow retained counsel; many such individuals in a row. We engaged in negotiations . . . with no fewer than five plus attorneys, prior to the return of the indictment." Supp. App. 143-44.