J-S35004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDRE MAURICE ADAMS, | |
| Appellant | No. 1552 MDA 2017 |

Appeal from the PCRA Order Entered September 7, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No(s):
CP-14-CR-0000355-2012
CP-14-CR-0001228-2012

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 24, 2018**

Appellant, Andre Maurice Adams, appeals from the order denying his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Appellant claims his prior appellate counsel provided ineffective assistance of counsel (IAC) by abandoning five claims of error during his direct appeal. After careful review, we affirm.

The factual history underlying Appellant's convictions is not germane to this appeal. Instead, we briefly set forth the procedural history of this case, which this Court has previously summarized as follows:

> On January 10, 2013, following a jury trial, [Appellant] was found guilty of thirty-eight charges in two separate dockets. At CP-14-CR-1228-2012 ("1228-2012"), [Appellant] was convicted of sixteen counts of possession of a controlled substance with intent to deliver ("PWID"), one count of criminal conspiracy, and

one count of criminal use of a communication facility ("CUCF"). At CP-14-CR-355-2012 ("355-2012"), [Appellant] was convicted of fourteen counts of PWID, and six counts of CUCF.

On February 12, 2013, the trial court sentenced [Appellant] to an aggregate sentence of seventy-nine to one hundred fifty-eight years' imprisonment on the two dockets.

\*\*\*

On March 14, 2013, [Appellant] filed a notice of appeal. On March 21, 2013, the trial court directed [Appellant] to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which [he] timely filed on April 10, 2013. In response to [Appellant's] concise statement, the trial court filed three separate opinions pursuant to [Rule] 1925(a) on May 7, May 13, and June 25, 2013. On April 2, 2014, this Court dismissed [Appellant's] appeal for failure to submit a brief. On April 23, 2014, [Appellant] filed a motion for leave to file an appeal *nunc pro tunc*, which the trial court granted on April 25, 2014.

On May 6, 2014, [Appellant] filed a second notice of appeal. On May 12, 2014, the trial court directed [him] to file a concise statement of errors complained of on appeal pursuant to [Rule] 1925(b), which [Appellant] timely filed on June 2, 2014. In response to [Appellant's] concise statement, the trial court filed three separate opinions pursuant to [Rule] 1925(a) on July 3, July 15, and July 16, 2014.

*Commonwealth v. Adams*, No. 808 MDA 2014, unpublished memorandum at 2-6 (Pa. Super. filed June 17, 2015) (footnotes omitted). In his 2014-15 direct appeal, Appellant raised six issues in his Rule 1925(b) statement, but only presented a single illegal sentencing claim in his brief to this Court. We vacated Appellant's sentence, and remanded for resentencing. *Id.* at 10. Subsequently, on August 25, 2015, the trial court resentenced Appellant to an aggregate term of 45-90 years' incarceration. Appellant filed a direct appeal from his new judgment of sentence, but that appeal was dismissed due to his failure to file a docketing statement in compliance with Pa.R.A.P. 3517.

Appellant filed the instant, timely PCRA petition on December 30, 2016. A PCRA hearing was conducted on August 25, 2017, during which Appellant and his direct-appeal attorney, Karen Muir, Esq., testified. On September 7, 2017, the PCRA court denied Appellant's petition and issued a contemporaneous opinion. Appellant filed a timely notice of appeal, and filed a timely Rule 1925(b) statement on October 30, 2017. On November 2, 2017, the PCRA court issued a statement pursuant to Rule 1925(a), indicating that Appellant's claims were adequately addressed in the court's opinion accompanying its September 7, 2017 order denying his petition.

Appellant now presents the following, five-part question for our review:

Was the failure of Appellate Counsel to brief (5) issues on appeal an error that denied [Appellant] effective counsel? Specifically, []:

a. Whether [Appellant]'s Sixth Amendment Right to Counsel was denied by the lower court when [he] was forced to proceed to trial *pro se*[?]

b. Whether the lower court properly removed [Appellant] from the jury selection process, a critical state in the proceedings and forced stand-by counsel to select the panel when [Appellant] sought to proceed *pro se* or with proper counsel[?]

c. Whether [Appellant]'s right to a speedy and prompt trial was violated during the pre-trial stages in this case[?]

d. Whether the Commonwealth engaged in sentencing manipulation by prolonging their investigation so as to increase [the number of] mandatory sentence[s] against [Appellant?]

e. Whether [Appellant] was entrapped as a matter of law or as a matter of fact[?]

Appellant's Brief at 4.

- 3 -

Our standard of review for orders denying PCRA relief is well established.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

Appellant's five claims all concern the alleged ineffective assistance of counsel. Generally speaking,

> [t]o prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (some citations omitted). The first, arguable merit prong asks, "whether the disputed action or omission by counsel was of questionable legal soundness." *Commonwealth v. Davis*, 541 A.2d 315, 318 (Pa. 1988).

> With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will

- 4 -

conclude that counsel's chosen strategy lacked a reasonable basis only if [the a]ppellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

*Chmiel*, 30 A.3d at 1127–28 (citations and quotation marks omitted).

Appellant's first claim concerns whether appellate counsel provided ineffective assistance when she failed to raise a claim that Appellant was denied his Sixth Amendment right to counsel when he was allegedly forced to proceed *pro se*. This matter arose during the course of a pre-trial hearing held on September 13, 2012. At that time, Appellant was represented by private counsel, Stephen O'Hanlon, Esq., at 355-2012, and by appointed counsel, Daniel Nelson, Esq., at 1228-2012. The hearing was held to address the attorneys' motions to withdraw as Appellant's counsel.

At the hearing, Attorney O'Hanlon testified that there were financial issues with the attorney-client relationship. He was hired to represent Appellant at 355-2012, before Appellant was charged with numerous additional counts at 1228-2012. N.T., 9/13/12, at 3. Appellant was unable to pay the additional fees required to cover both cases. *Id.* Second, Attorney O'Hanlon stated that "every time" he "appeared in court, whether it was for pretrial or when we had the continued motions to suppress with Your Honor, … [Appellant] thought that he was there to represent himself and had made it

near impossible for me to represent him." **Id.** Attorney O'Hanlon also complained that Appellant repeatedly requested that he file frivolous motions, which caused additional tension between them. As Attorney O'Hanlon explained:

> [E]very time I have said that I wasn't going to do that, I communicated with him fully as to the reason for me not doing it, but every time I've s[een] him up in Centre County [Correctional Facility] he would call me a dick head, a fucking cracker, a cock sucker, everything like that. So it ... has made attorney/client communication impossible.

**Id.** at 4. Attorney O'Hanlon further indicated that he had met with Appellant three times, and had written to him on least thirteen occasions. **Id.** at 6.

Appellant responded with specific complaints regarding Attorney O'Hanlon's performance, and essentially indicated that he agreed that the attorney/client relationship had soured and, thus, he did not oppose Attorney O'Hanlon's motion to withdraw his representation. **Id.** at 6-9. As a result, the trial court granted Attorney O'Hanlon's motion to withdraw. **Id.** at 10.

The court then presented Appellant with a choice: that he proceed either with Attorney Nelson as appointed counsel for the consolidated docket, or *pro se*. **Id.** The court informed Appellant that, if he proceeded *pro se*, it would permit him to refile any motion that had been rejected due to the ban on hybrid representation. **Id.** at 11. Appellant responded that he did not feel comfortable proceeding *pro se*. **Id.** at 12. However, he also indicated his displeasure with Attorney Nelson, asserting that Attorney Nelson, as appointed counsel, was essentially working for the same government that was

prosecuting him. *Id.* at 13. He also alleged communication problems with Attorney Nelson. *Id.* at 12-14. Attorney Nelson responded:

> Your Honor, there is a motion to withdraw. As I recall, two prior occasions where we have been in front of different judges from this court, criminal jury selection, criminal pretrial conference, my client has raised irreconcilable differences. He's raised my ineffective assistance. He's raised my inexperience in these matters. [At] each juncture along those lines, I've stayed willing to represent [Appellant].

*Id.* at 18. Attorney Nelson then indicated that Appellant specifically requested that he withdraw. *Id.* He continued as follows:

> I actually do agree with [Appellant]. [There exist] significant irreconcilable differences … in this particular case.
>
> It's never happened to me before in my representation of individuals in Centre County but it is in this case. And it really came to a head at the point in time I shared similar experiences to Mr. O'Hanlon and what he was representing to the court, although I haven't been insulted or maligned. He hasn't done anything like that to me. But with regard to advice, that dynamic is supposed to take place between attorneys and clients, [but] there is an absolute and complete breakdown.
>
> I offer advice, [Appellant] listens to that advice, he usually responds to that advice, and then even when we agree on some course … it is completely reversed. I'm then the liar in this matter and then I'm accused of being ineffective – or I'm accused of offering ineffective assistance to [Appellant].
>
> ***
>
> This is classic in my interactions with [Appellant]. [F]rom the very first time that I sat down with him to where we stand here and now, I'm not so sure that we are in the face of an election where [Appellant] is actually choosing to proceed *pro se* because he chooses to be his own attorney and he wants to be a true *pro se* litigant.
>
> I think we're much, much closer to the forfeiture of counsel. He has done this numerous times. He hasn't worked with any of

- 7 -

them. We have all cited same or similar concerns with our interactions. And, truth be told, no matter how this goes, even if I stay on this case, he is going to accuse me of things I didn't do.

There is no doubt in my mind. It's already happened once. And no matter what our communications are, [Appellant] does not represent them as they actually happened. There is no dynamic here with my client at all. I'm not sure how we could possibly prepare.

*Id.* at 19-21.

Appellant responded that he was entitled to an attorney who he could "trust to guard [his] life" and that he "should be able to work with that person to an extent." *Id.* at 34. He indicated his belief that Attorney Nelson was essentially outclassed by the prosecutor, A.D.A. Nathan Boob, and that he needed someone more willing or capable to do battle against the Commonwealth. *Id.* at 35. Appellant also asserted that his previous difficulties with appointed and private counsel were not a ploy to delay justice. *Id.* The trial court ultimately concluded as follows:

The [c]ourt does find that there has been at least two court[-]appointed attorneys, there has been one private counsel that this court has dealt with, and there has also been conversations with [other private attorneys]. At this time the court does find that you forfeited your right to counsel based on your conduct with these attorneys and that you will proceed *pro se*.

*Id.* at 37.

Appellant now contends that Attorney Muir, his prior appellate counsel, was ineffective for failing to raise a claim during his direct appeal that the trial court deprived him of his Sixth Amendment right to counsel by deeming that

right to have been forfeited. Appellant argues that this claim had arguable

merit because

> a thorough review of the September 13, 2012 hearing demonstrates the [t]rial [c]ourt was never presented with competent evidence of [Appellant's] conduct to warrant or justify the finding that he had forfeited his right to counsel and was thus forced to defend himself for pre-trial motions and trial in two complex drug cases. In fact, no evidence was presented to the [t]rial [c]ourt. [Appellant's] conduct was commented on by all involved, but no transcripts of prior proceedings indicating disruptive behavior were admitted into evidence, and no testimony under oath was elicited indicating [Appellant's] treatment of or ability to work with his prior counsel. In short, [Appellant] was not afforded the right to challenge the statements made against him in an effort to show the trial court he had not conducted himself in such a manner as to forfeit his right to counsel. The right the assistance of counsel in a criminal trial is a fundamental right. It should not be deprived on the basis of forfeiture absent competent evidence of a defendant's "extremely serious misconduct" or "extremely dilatory conduct." ***United States v. Thomas***, 357 F.3d 357, 362 (3d Cir. 2004) (quoting [***United States v.***] ***Goldberg***, 67 F.3d []1092, 1100-02 (3d. Cir. 1995). In the case *sub judice*, no such evidence was presented prior to the trial court['s] entering an order that [Appellant's] right to counsel was forfeited.

Appellant's Brief at 10-11.

Our Supreme Court follows the ***Goldberg*** view of forfeiture. ***See***

***Commonwealth v. Lucarelli***, 971 A.2d 1173, 1179 (Pa. 2009). Thus, a

defendant's right to counsel is forfeited when he engages in 1) extremely

serious misconduct; or 2) extremely dilatory conduct. ***Id.***

Appellant's ineffectiveness claim lacks arguable merit. There was clearly

a record made of Appellant's misconduct toward both appointed and private

counsel, demonstrated through the testimony of both Attorneys Nelson and

O'Hanlon. Their testimony adequately demonstrated both Appellant's extreme misconduct in the attorney/client relationship, including false accusations of wrongdoing and abusive communications by Appellant, as well evidence of extreme dilatory conduct, such as Appellant's repeated requests for the filing of frivolous motions, and his repeated filing of *pro se* motions while represented by counsel. Because we conclude that such conduct satisfies the **Goldberg** standard, we hold that Appellant's first IAC claim lacks arguable merit.[1]

Appellant's specific complaint that the testimonies of Attorneys Nelson and O'Hanlon were not made under oath is waived.[2] Appellant did not raise this claim in his Rule 1925(b) statement and, as a result of that ommission, the issue was not addressed in the PCRA court's opinion. **See** Appellant's Rule 1925(b) statement, 10/30/17, at 1. "Any issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306,

---

[1] The PCRA court determined that Attorney Muir was not ineffective because she possessed a reasonable basis to abandon the claim in Appellant's brief on direct appeal, namely, that it was a strategic decision based on her perception that the claim was unlikely to succeed. However, "[t]o the extent our legal reasoning differs from the [PCRA] court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record." **Commonwealth v. Sauers**, 159 A.3d 1, 7 n.4 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1057 (Pa. 2017) (quoting **Commonwealth v. Williams**, 125 A.3d 425, 433 n.8 (Pa. Super. 2015)).

[2] We note that there were no contemporaneous objections to the form of the attorneys' testimony. Nevertheless, we overlook waiver in that specific circumstance, given that Appellant was still technically represented by Attorneys Nelson and O'Hanlon until after they had testified and the court had permitted them to withdraw.

309 (Pa. 1998). In any event, we would question the merit of such a claim. The Rules of Professional Conduct dictate that a "lawyer shall not knowingly … make a false statement *of fact* or law to a tribunal…." MRPC Rule 3.3(a)(1) (emphasis added). Moreover, Appellant provides no case law supporting his assertion that an attorney must be sworn in while litigating a motion to withdraw as counsel.

Next, Appellant argues that the trial court improperly removed him from the jury selection process by 1) ostensibly forcing him to allow stand-by counsel to select the jury panel, when Appellant believed that he was *pro se* during jury *voir dire* and, later, 2) physically removing him from jury selection. As a result, Appellant asserts that the trial court violated his Sixth Amendment rights, and that Attorney Muir was ineffective for failing to raise related claims on direct appeal. Appellant's second IAC issue is clearly comprised of two distinct claims.

As discussed with regard to his first IAC claim, the trial court determined that Appellant forfeited his right to counsel, permitted Attorneys O'Hanlon and Nelson to withdraw, and appointed Attorney Nelson as standby counsel. However, at the beginning of jury selection, the trial court, now with a different judge presiding, proceeded as if Appellant was represented by Attorney Nelson, and as if the forfeiture of counsel had never occurred. **See** N.T., 12/3/12, at 9. Appellant objected, stating, "He is not my counsel. Let's go pick the jury." **Id.** In response, the court attempted to conduct a waiver-of-counsel colloquy. **Id.** at 9-10. Appellant, clearly growing impatient as the

- 11 -

court tried to conduct the colloquy, again stated, "I don't have counsel. I'm *pro se*. I don't know what changed today." *Id.* at 11.

After a short break, the court then stated, "What I am faced with is an order that appoints Mr. Nelson as counsel." *Id.* at 12. The court did not identify the order to which it was referring. As described with respect to Appellant's first IAC claim, although the court initially appointed Attorney Nelson to be Appellant's counsel, he successfully motioned to withdraw, and was then appointed to be standby counsel. *See* Opinion and Order, 9/19/12, at 6 ¶ 3 ("Attorney Daniel J. Nelson's Motion to Withdraw is GRANTED IN PART. Attorney Nelson will remain on as Standby Counsel."). Appellant indicated that he had never received any order reappointing Attorney Nelson as full counsel. N.T., 12/3/12, at 15 ("I never received this order, so I didn't read any order. I am the defendant in this case. This is my case. This is not his case. I asked him to be removed. He is standby counsel. He was ordered to be standby counsel."). Nevertheless, the court responded, "If you cannot remain silent during the proceeding and allow Mr. Nelson to represent you, then you will be removed." *Id.* at 16. Ultimately, Attorney Nelson conducted *voir dire* over Appellant's repeated objections.

Initially, we begin our analysis by noting that Appellant was mistaken that he held *pro se* status during *voir dire*, as the new trial judge had reappointed Attorney Nelson to represent him prior to that proceeding, despite having previously determined that Appellant had forfeited his right counsel, as discussed *supra*. *See* Order, 11/29/12, at 1 ("[Appellant]'s request for

court-appointed counsel is GRANTED. The [c]ourt is mindful that by Opinion of Judge Jonathan Grine, dated September 19, 2012, [Appellant] was deemed to have forfeited his right to counsel. Now, on the cusp of jury selection, and in advance of trial, the [c]ourt considers [Appellant's] plea for representation to be critical to justice, and therefore re-appoints [A]ttorney Daniel Nelson, [Appellant's] previously appointed, and current standby counsel.). Thus, it was proper for Attorney Nelson to conduct *voir dire* as Appellant's court-appointed counsel. Accordingly, we conclude the first part of Appellant's second IAC claim lacks arguable merit, as the factual basis for it is unsound.

Regarding the second part of Appellant's second IAC claim, the trial court physically removed Appellant from *voir dire* after the following occurred in the presence of the jury pool:

[Appellant]: Your Honor, can they take me back to jail?

The court: No. I would like for you to stay with us Mr. Adams.

[Appellant]: I need to go back to jail. I had enough of this.

The court: Members of the prospective panel, if you heard that comment, I would ask that you completely disregard what was just said. If you cannot disregard that – I need to know if that prejudices you in any way. Please raise your hand.

I certainly understand. Raise your hand again.

Juror No. 8, Juror No. 14, anyone else? All right.

…

[Appellant]: I don't agree with this situation. I really don't. They're forcing me to trial. It's not fair. I don't have a fair and impartial judge. Now they're going to give me a fair impartial jury[?]

The court: Will you take him back to the hallway please?

- 13 -

[Appellant]: Take me back to jail. This is not a jury of my peers. Ya'll going to handcuff me or are you going to handcuff me in the hallway? Ya'll are not a jury of my peers. I'm black.

(Whereupon, [Appellant] was escorted out of the courtroom at this time.)

N.T., 12/3/12, at 48-49.

As is apparent from the record, *supra*, Appellant essentially demanded his own removal from the *voir dire* proceeding. On this basis alone, his IAC claim lacks arguable merit. Appellant's counsel cannot be deemed ineffective for failing to argue that his Sixth Amendment right to be present at *voir dire* had been violated when Appellant himself requested, on three occasions in quick succession, to be removed from the proceeding and taken back to jail.

Alternatively, we also find this claim lacks arguable merit because the trial court did not abuse its discretion by removing Appellant from *voir dire* given his repeated, disruptive outbursts.

> The United States Constitution[,] the Pennsylvania Constitution[,] and [the] Pennsylvania Rules of Criminal Procedure 1117(a) guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. However, in **Illinois v. Allen**, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the United States Supreme Court determined that the right to be present in the courtroom is not absolute and explicitly held,
>
>> that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

> ***Id.*** at 343, 90 S.Ct. at 1060-1061, 25 L.Ed.2d at 359.  ***See also***,
> ***Commonwealth v. Africa***, 466 Pa. 603, 353 A.2d 855 (1976).

***Commonwealth v. Basemore***, 582 A.2d 861, 866–67 (Pa. 1990) (footnotes

omitted).

Appellant argues that he "was not as disruptive during the jury selection

process as the defendant in ***Basemore***."  Appellant's Brief at 12.  He contends

that his "expression of frustration" did not constitute conduct that justified his

removal.  ***Id.***  By way of comparison, in ***Basemore***, immediately prior to *voir*

*dire*, the defendant essentially promised to make a mockery of the

proceedings.  ***Basemore***, 582 A.2d at 867.  He lived up to that promise:

> When questioned by the trial judge, [the defendant] was
> unresponsive and attacked the trial judge asking him if he was
> "out for blood", and if he had "wax" in his ears.  [The defendant]
> threatened to disrupt the proceedings a second time and was
> warned by the trial judge that if he did so he would be removed
> from the courtroom.
>
> When jury selection resumed, [the defendant] made a third
> outburst, addressing a prospective juror as follows:
>
>> I have a question.  Miss, this guy is not my lawyer.  I fired
>> him for ineffective counsel.  I have civil suits filed against
>> him. I've had him under surveillance for three months.  They
>> will not give me another lawyer.  They trying to make me
>> take their lawyer.  He's been lying the whole entire time.
>> He is not my counsel.  He have given me no paperwork.  I
>> do not know what's going on and he is not my lawyer.  I'm
>> asking, I'm begging do not take part in this charade because
>> this man is not my lawyer.  He is not.  I fired him.  It's on
>> the record but they will not give me another counsel.  They
>> trying to tell me I have to take him when I don't have to do
>> anything.   He was going to sidebar quite a few times.
>> Wouldn't let me know.  He told me I do not have any rights.
>> He told me to take a deal for life in prison for something I
>> did not do.  I'm begging you [to] not to take part in this
>> charade.

\*\*\*

> Mr. Stein is not my lawyer. He's not my lawyer. Miss, don't even listen to what he's saying. Don't waste your time. If you take part in this charade, my blood will be on you[r] hands. He is not my lawyer. I've had him defaced.

> After a discussion in chambers with counsel, the trial judge in open court again warned [the defendant] that if he disrupted the proceedings he would be removed from the courtroom. The trial judge stated:

>> We are going to proceed with one more juror. If you disrupt the *voir dire* with regard to that juror, you will be removed from this courtroom and your trial will proceed in your absence.

> Another prospective juror was questioned by counsel and [the defendant] blurted out: "I do not have a lawyer, and this man is- they trying to get me to take that character when I do not have a lawyer and it's good that you're going to be dismissed. Glad to hear it and you can let him go[."] The juror was excused and [the defendant] was, pursuant to the trial judge's earlier warning, removed from the courtroom.

*Id.* at 867–68 (citations omitted).

Instantly, Appellant argues that, unlike the defendant in **Basemore**, he did not "verbally attack the judge, berate perspective jurors, or make it clear that he intended to disrupt the proceedings." Appellant's Brief at 12. Initially, we reject Appellant's characterization that relief is warranted if his conduct did not reach the level of disruption observed in **Basemore**. We agree with Appellant that his conduct did not quite reach the level of disruption at issue in that case; however, that does not mean that his conduct fell short of the standard for removal. Appellant has not provided this Court with any case law suggesting that the disruptive behavior addressed in **Basemore** constitutes the minimum bar for removal. Indeed, in our view, Basemore's

behavior went far beyond what was required to remove a defendant from trial under the ***Allen*** standard.

Here, the trial court repeatedly warned Appellant that he would be removed if his behavior continued to be disruptive. **See** N.T., 12/3/12, at 6, 8, 12, 15-16, 20-21, 23. Nevertheless Appellant continued to make statements out of turn that were both disrespectful and disruptive to the proceedings and the trial court, both inside and outside the presence of the jury pool. **See id.** at 5 (feigning ignorance), 8-9 (questioning the integrity of the court), 10 (same), 11 (feigning inability to hear the judge), 13 (inviting the court to hold him in contempt), 14-15 (accusing the court of failing to following the appropriate legal process), 16 (making first request to be taken back to jail), 22 (refusing to participate in the colloquy to proceed *pro se*, despite clearly seeking to proceed *pro se*), 24 (making second and third requests to be taken back to jail), 48-49 (disrupting the jury selection process, as reproduced *supra*). Thus, Appellant continued to be disruptive and disrespectful, even after the trial court *repeatedly* warned that such conduct could result in his removal. As such, we ascertain no error or abuse of discretion in the trial court's obviously reluctant decision to remove Appellant from *voir dire* when his disruptive behavior continued unabated in front of the prospective jury pool. Indeed, we commend the trial court for its patience, its repeated attempts to satiate Appellant's concerns, and its clear intent to keep Appellant present for jury selection despite his repeated transgressions. As such, we conclude that Appellant's collateral IAC claim lacks arguable

merit, as the trial court did not err when it physically removed him from the courtroom during *voir dire*.

Next, Appellant argues that appellate counsel was ineffective for failing to raise the claim that his right to a speedy trial pursuant to Pa.R.Crim.P. 600 was violated. In support of this claim, Appellant argues that when he filed a Rule 600 motion on August 14, 2012, more than "180 days had passed from the time the charges were brought against him and he had not been brought to trial." Appellant's Brief at 15. Appellant then argues that the trial court's determination that Rule 600 had not been violated at that time was unreasonable and, therefore, that appellate counsel was ineffective for failing to raise a related Rule 600 claim during his direct appeal. *Id.* at 15-16.

This claim lacks merit on its face. There is no appellate remedy for a pretrial violation of Rule 600's 180-day rule. Rule 600(B)(1) provides that "no defendant shall be held in pretrial incarceration in excess of … 180 days from the date on which the complaint is filed…." The remedy for a violation under subsection B of Rule 600 is set forth in Rule 600(D)(2), which is release by the trial court on nominal bail. Only violations pursuant to subsection A's 365-day rule afford the remedy of a dismissal of charges with prejudice. *See* Rule 600(D)(1); *see also Commonwealth v. Abdullah*, 652 A.2d 811, 813 (Pa. 1995) (holding that Rule 1100 (the prior version of Rule 600) "does not provide a remedy for a defendant who is improperly denied release on nominal bail"). Accordingly, after Appellant was tried and sentenced, any pretrial violation of Rule 600's 180-day rule was rendered moot. Accordingly, we will

not deem appellate counsel ineffective for failing to seek relief for a claim, meritorious or not, where no remedy is available.

As for Appellant's fourth and fifth IAC claims, he explicitly abandons them in his brief.  *See* Appellant's Brief at 16-17.  Accordingly, we deem them waived.

Order *affirmed*.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2018