J-S33027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYHEEME ROBERT WOOD | : | |
| | : | No. 1929 MDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence April 6, 2016
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000994-2015

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 21, 2017**

Ryheeme Robert Wood appeals from the judgment of sentence entered on April 6, 2016, in the Franklin County Court of Common Pleas, made final by the denial of post-sentence motions on October 24, 2016. On October 22, 2015, a jury found Wood guilty of simple assault,[1] but not guilty of recklessly endangering another person ("REAP").[2] The court sentenced Wood to a term of 12 to 24 months' state incarceration. On appeal, Wood raises the following issues: (1) whether the trial court erred in finding Wood forfeited his right to counsel; (2) whether there was sufficient evidence to support his simple

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

[2] 18 Pa.C.S. § 2705.

assault conviction; and (3) whether the verdict is against the weight of the evidence. *See* Wood's Brief at 4-5. For the reasons provided below, we vacate the judgment of sentence and remand for further proceedings.

The trial court set forth the underlying facts as follows:

> At the October 22, 2015[,] jury trial, this Court heard evidence pertaining to the incident giving rise to the charge of simple assault against [Wood]. On May 12, 2015, Trooper [Joshua] Marsh was dispatched to the scene of an incident where an individual had placed a phone call to 911. Upon arrival, Trooper Marsh identified the victim – Ashley Denise Long – and [Wood]. At the scene, the victim informed Trooper Marsh that [Wood] struck her. Trooper Marsh testified that he had the victim compose a written statement at the scene on May 12, 2015. Trooper Marsh also testified that before the victim composed the written statement, [Wood] was not allowed any contact with her. Trooper Marsh testified that the purpose of a written statement is to preserve evidence in the event that a victim may recant their original version of what transpired. Trooper Marsh read the following at trial from the victim's written statement: "On May 12, 2015, me and my boyfriend were driving on Route 11 and got into a verbal argument. And while I was driving down Route 11, he reached over and punched me in my mouth." Trooper Marsh testified that the victim's injuries were visible at the scene, and that "[i]t looked as if she was struck in the face. Her lip was swollen … Underneath the inside lip, there was a small abrasion that ran across her front two teeth." The victim declined medical assistance.
>
> This Court also heard testimony pertaining to the victim's prior testimony at the preliminary hearing.[3] During the jury trial, Trooper Marsh read the following testimony given by the victim at the preliminary hearing[:]
>
> > Q. Okay. So, you mentioned that you were driving along. At any point was there a disagreement?
> >
> > A. Yes, that I provoked myself. Because, like I told you earlier, when I'm not on my medication, I am completely irrational, I don't know what I'm doing, I make poor

- 2 -

decisions and I tend to provoke, which is exactly what happened that day.

Q. When you say you provoked him, you provoked him to do what?

A. I made him angry.

Q. Okay. And as a result of his anger, what happened?

A. I got punched in my mouth. But, at the end of day, like I said –

[Wood]: Wow!

_____

[3] Following the incident and the preliminary hearing, the victim was killed in an automobile accident, and was therefore unable to testify at the jury trial.

_____

Trooper Marsh testified that following this initial testimony, the victim began to recant her statement. Trooper Marsh also read the following testimony provided by the victim at the preliminary hearing: "I should not be – I want the charges dropped. I was not on my medication. I was the one who ca[u]sed the whole thing. I was the one who should not have acted out the way that I did." Trooper Marsh testified that the victim then stated that she, not [Wood], punched her in the face.

Lea Richmond also testified at the jury trial. Ms. Richmond testified that she had previously worked with the victim, and that they had known each other for six (6) years. Ms. Richmond testified that on May 10, 2015, two (2) days before the incident in question, she communicated with the victim on Facebook instant messenger. Ms. Richmond testified that during their conversation, the victim expressed that she was "stressed out" by [Wood], and that [he was] "threatening her and cheating." After the conversation on Facebook instant messenger, Ms. Richmond testified that she had another conversation with the victim on the phone. Ms. Richmond testified that "[o]nce we got on the phone, I realized she was actually really worried. I thought it was a joke up until then." [Ms.] Richmond also testified that the victim told

- 3 -

her that she was scared, and "that she was letting [her] know if anything were to happen it was [Wood]." Ms. Richmond testified that the victim told her "she was no longer staying with her parents because [Wood] was following her." On cross-examination, Ms. Richmond testified that while the victim had not discussed it herself, she had learned from other individuals of prior violent acts committed by [Wood].

Trial Court Opinion, 1/20/2017, at 2-5 (record citations omitted).

Following the incident, Wood was charged with one count of simple assault and one count of REAP. A preliminary hearing was held on June 2, 2015. At that time, the court indicated that Wood had forfeited his right to counsel, even though he disputed that finding. *See* N.T., 6/2/2015, at 3. On October 22, 2015, a jury found Wood guilty of simple assault, but not REAP. On April 6, 2016, the court sentenced him to a term of 12 to 24 months' state imprisonment.[3]

On April 14, 2016, the court entered an order granting the appointment of conflict counsel, Kristopher Accardi, Esquire. Additionally, the court issued two orders granting an extension of time to file a post-sentence motion on April 19, 2016, and on May 3, 2016. After several continuances, the court issued an order denying Wood's post-sentence motions on October 24, 2016. This appeal followed.[4]

_____

[3] At both proceedings, Wood represented himself.

[4] On November 28, 2016, the trial court ordered Wood to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wood filed a concise statement on December 12, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 20, 2017.

In his first argument, Wood complains the trial court erred in finding that he forfeited his right to counsel. **See** Wood's Brief at 5.

Wood's issue raises "pure questions of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Henderson**, 938 A.2d 1063, 1064-1065 (Pa. Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008). Additionally, we are guided by the following:

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

**Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178-1179 (Pa. 2009) (citations omitted).

Moreover, the Pennsylvania Supreme Court in **Lucarelli** explained the difference between waiving one's right to counsel and forfeiting it:

> Like the Superior Court in **Commonwealth v. Thomas**, 879 A.2d 246, 257-59 (Pa. Super. 2005), we find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in **United States v. Goldberg**, 67 F.3d 1092, 1099-1101 (3d Cir. 1995). Waiver is "an intentional and voluntary relinquishment of a known right." **Id.** at 1099. By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the

- 5 -

result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." **United States v. Thomas**, 357 F.3d 357, 362 (3d Cir. 2004) (quoting **Goldberg**, supra at 1100-02). **See also Commonwealth v. Coleman**, 905 A.2d 1003, 1006-08 (Pa. Super. 2006) (affirming a finding of forfeiture where defendant, who had the means to retain counsel, appeared without counsel or engaged in behavior that forced counsel to withdraw).

The consequences of the distinction between waiver of the right to counsel and forfeiture of the right to counsel are significant because, we now hold, Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found. To hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance. Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. Such a result would be untenable. **See United States v. Thomas**, **supra** at 362 ("Forfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*.") (quoting **Goldberg**, **supra** at 1101). . . . **We hold today that where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel.**

*Lucarelli*, 971 A.2d at 1179 (emphasis added).

In **Lucarelli**, the Court determined the defendant forfeited his right to

counsel, as opposed to waived it, where he

had more than eight months to prepare for trial; had the financial means to retain counsel; did retain counsel on several occasions, although the attorneys were permitted to withdraw when the attorney-client relationship deteriorated; was given access to $20,000 by the trial court some five weeks before the

- 6 -

> commencement of trial for the purpose of retaining counsel; and
> failed to offer an explanation for not having retained counsel by
> the start of trial.

*Id.* at 1180.  The Court stated the defendant "simply decided not to retain private counsel because he did not wish to spend the money."  *Id.*  It then concluded these actions constituted "extremely dilatory conduct" and the trial court acted properly in directed the defendant to proceed *pro se*.  *Id.  See Commonwealth v. Travillion*, 17 A.3d 1247, 1248 (Pa. 2011) (*per curiam* order) (holding defendant forfeited his right to counsel where he engaged in behavior that "included, *inter alia*, firing his original privately retained trial counsel, who was prepared to proceed to trial; refusing to hire new counsel; and refusing to meet and cooperate with two court-appointed lawyers."); *Commonwealth v. Kelly*, 5 A.3d 370 (Pa. Super. 2010) (finding the court did not err by determining defendant forfeited his right to counsel because, *inter alia*: (1) he was  unwilling to cooperate with all three counsel assigned to him; (2) he argued that all three counsel were incompetent because they refused to argue what he believed was the law; (3) his trial had been postponed because he could not agree with his second assigned counsel; (4) he wanted to a fourth counsel assigned to him and the postponement of the

trial instead of trying to cooperate with his third counsel), *appeal denied*, 32 A.3d 1276 (Pa. 2011).[5]

Turning to the present matter, Wood argues his conduct did not amount to forfeiture based on the following: (1) he did not cause any delay and the matter was never continued; (2) he was not represented by multiple attorneys; (3) he did not argue with his counsel or treat them with "disdain;"[6] (4) he did not file *pro se* motions while represented by counsel; (5) he was never given access to funds to retain counsel; and (6) the court did not determine his ability to afford counsel. **See** Wood's Brief at 7-8.

As indicated above, the trial court found Wood's "conduct of missing intake appointments with the Franklin County Public Defender's Office amounted to a forfeiture of his right to counsel." Trial Court Opinion, 1/20/2017, at 12. Moreover, at the post-sentence motions hearing, the court explained its rationale as follows:

> As acknowledged by [Wood's counsel], [Wood] was combative in his numerous appearances before the Court, and he clearly seemed to be fixated on his belief that the charge could not proceed against him because the alleged victim was deceased. And the efforts to educate [Wood] to the contrary was not received well by [him]. At each appearance there was round and

---

[5] **See also Commonwealth v. Coleman**, 905 A.2d 1003 (Pa. Super. 2006) (concluding right to counsel was forfeited where defendant: (1) repeatedly dismissed and replaced counsel or appeared *pro se*; (2) was financially capable of retaining counsel for her defense; and (3) refused to listen to court's warnings that trial would commence, with or without representation by counsel), *appeal denied*, 923 A.2d 409 (Pa. 2007).

[6] Wood's Brief at 8.

round conversation about that issue and it lead into whether [Wood] was going to seek court-appointed representation. He clearly didn't feel that it could go to trial and that he would not need an attorney and he was advised to make an appointment with the Public Defender's office.

The Court also notes that many times he was late for court appearances and it was evident that he was banking on the fact that the charge would be dismissed because the victim was deceased.

From the [evidence] presented today … there is support for the Commonwealth's position that [Wood] was afforded the opportunity on three occasions, May 26th, July 15th, and July 21, 2015 to qualify for counsel through appointment at no charge, if it was deemed appropriate at the interview process. He failed to attend the appointments and the record is clear on each court appearance that [Wood] was questioned about the matter and his goal was to delay the matter or to have the charges dismissed. Again, under his erroneous belief that they could not proceed given that the victim was deceased.

N.T., 10/24/2016, at 4-5.

We are compelled to disagree with the trial court's determination. Our review of the record does not clearly support a finding that Wood acted in an extreme dilatory manner to forfeit his right to counsel. On June 2, 2015, Wood refused to sign a waiver of counsel. That same day, at the preliminary hearing,[7] when asked about the waiver, Wood stated, "I refuse. I want counsel. I never told you I was under the impression that I did not want to be represented. I have a right to be represented diligently, promptly, zealously and most importantly, effectively." N.T., 6/2/2015, at 3. The

---

[7] Magisterial District Judge Larry Pentz presided over the matter.

magisterial district judge, without any detailed recounting of prior conversations, noted that it and the parties "already talked about that" and proceeded with the matter. The victim, who has since died as noted above, testified at the hearing. She recanted the statement she made to Trooper Marsh at the time of the incident, testifying that she had punched herself, and not Wood. *Id.* at 6. The victim indicated the story she gave the trooper was incorrect because she had not taken her medication. *Id.* at 9.[8] The trooper also testified as to his recitation of what the victim told him following the assault. *Id.* at 13-20.

On July 8, 2015, the court denied Wood's first motion to continue his mandatory arraignment. The Commonwealth opposed the motion, arguing Wood had sufficient time to apply for counsel after the June 2nd preliminary hearing. *See* Wood's Motion to Continue Mandatory Arraignment, 7/8/2015, at 1. The court held Wood's arraignment hearing that same day.[9] Wood testified that prior to the preliminary hearing, on May 26, 2015, he was scheduled to have an appointment at the Public Defender's Office but was late because he did not have transportation. *See* N.T., 7/8/2015, at 2-3. Wood stated that based on the magistrate judge's statements at the preliminary hearing, he did not do anything to obtain counsel prior to the arraignment

---

[8] She also wrote a statement, indicating that she wanted to drop all charges against Wood. *Id.* at 25-26.

[9] The matter was transferred to President Judge Carol L. Van Horn.

- 10 -

hearing because he "was under the impression that [he] just wasn't going to receive counsel." *Id.* at 4. The trial court informed Wood that he had two options: (1) pay for his own attorney or (2) apply for the appointment of counsel. *Id.* at 6-7.

Subsequently, on August 24, 2015, Wood appeared before the trial court for a call of the list proceeding without an attorney to represent him. Wood stated the victim had died in a car accident on July 25, 2015, and that he had not obtained counsel because "due to [her] death, he hasn't had any time to even focus. It hit [him] kind of hard." *Id.* at 5. He also testified he missed a second appointment with the Public Defender's Office because of "the situation" with the victim's death. *Id.* The court again stated Wood could hire an attorney, apply for appointment of counsel, or represent himself. *Id.*[10] Additionally, the following discussion took place:

> [Wood]: Your Honor, I fail to comprehend why we're pursuing this issue due to the fact the Commonwealth's only witness to the case sadly died in a car accident.
>
> And this is torture for me. This is my child's mother. She came with a notarized letter to the District Attorney's Office telling the Commonwealth that she did not wish to pursue this.
>
> But yet the Commonwealth, who is here to serve and to protect people of the Commonwealth, continues to pursue this. She's not a member of the Commonwealth. She's from the State of Maryland. She does not want to go through this. We're having a case with a dead woman. I don't understand this.

---

[10] At the hearing, the Commonwealth indicated it had a plea offer for Wood but that it was uncertain that it had been communicated to him earlier. *Id.* at 2-3. Wood rejected this offer. *Id.* at 4.

- 11 -

THE COURT: I understand your position that you don't think this case should move forward. It's the Commonwealth's decision to make.

…

Yes. It's the Commonwealth's decision to make whether charges will be pursued. They have decided that they're going to pursue the charges. It doesn't always depend on what the victim says whether charges are pursued.

*Id.* at 3-4.

Thereafter, a pre-trial conference was held on September 3, 2015. Wood mentioned he had not taken "the initiative to get a lawyer" because he had "been dealing with a custody battle for [his] son." N.T., 9/3/2015, at 5.[11]

On October 12, 2015, at the beginning of Wood's jury selection proceeding, the court indicated to prospective jurors that Wood was choosing to represent himself. N.T., 10/12/2015, at 4. In response, at a sidebar, Wood stated that one week earlier, he had attempted to go to the Public Defender's Office to make an appointment but got into a verbal dispute with the receptionist, in which she allegedly slammed the window and said that she was going to call the sheriffs because he had asked for her name. *Id.* at 4-6. The court informed Wood he had forfeited his right to counsel because he did

---

[11] The baby's mother is the now-deceased victim in this matter.

not appear for appointments and stated the parties would proceed with jury selection. *Id.* at 7.[12]

Lastly, Wood arrived late for the start of his jury trial, on October 22, 2015, missing jury instructions, opening arguments, and the beginning of Trooper Marsh's direct examination because he was under the erroneous impression that trial started at 9:30 a.m. N.T., 10/22/2015, at 4-24. Wood reasserted his request for counsel and the trial court responded that Wood did not keep his appointments with the Public Defender's Office. *Id.* at 25. During Wood's case-in-chief, he requested the prosecutor take the stand because he was representing the deceased victim. *Id.* at 100. Wood also made two oral motions, requesting the court dismiss the charges because: (1) the victim was deceased and she was not able to be cross-examined; and (2) he did not have an adequate defense since he did not have counsel.[13] *Id.* at 102-103. The court denied both motions. *Id.* at 103-104. It also merits mention that the Commonwealth introduced the deceased victim's preliminary hearing testimony, which included both her initial statements to the investigating officer and her recantation of the assault. *Id.* at 32-38.[14] Additionally, the

---

[12] Additionally, when asked if he had any witnesses that he would like to identify, Wood stated that he wanted "to have a right to face [his] accuser," the deceased victim. *Id.* at 8.

[13] Wood stated, "I am extremely, extremely poor. I'm indigent. And I can't afford one." *Id.* at 103.

[14] Wood objected on the basis that "we keep having a trial without a witness" and he "had a right to face [his] accuser." *Id.* at 38.

Commonwealth called Lea Richmond, a friend of the victim, who testified regarding her communications with the victim *via* Facebook Instant Messenger and phone calls made two days before the incident at issue took place. *Id.* at 68-80. With respect to the messages, Richmond testified the victim told her that Wood was threatening the victim. *Id.* at 77. Richmond stated she spoke with the victim the same day as the messages were exchanged, and the victim told her the following: "She told me that she was letting me know if anything were to happen, it was him because she was from -- I was from out of town. So she was letting someone else know away from the situation." *Id.* at 79.

In comparison to cases like *Lucarelli*, *Kelly*, and *Travillion*, Wood's conduct does not amount to extreme dilatory behavior sufficient to result in the forfeiture of his right to counsel. First, and of most importance, we note the record is deficient regarding any inquiry as to Wood's "opportunity and financial wherewithal" to obtain representation. *See Lucarelli*, 971 A.3d 1179. Wood currently appears to be indigent, as the trial court appointed a public defender for his post-sentence motions and direct appeal. Second, even though the trial court instructed Wood of his right to an attorney and the possible forfeiture of that right at the arraignment and call of the list proceedings, only five months had passed from the time of the incident to when jury selection began without Wood having counsel. Furthermore, each time he appeared without counsel, Wood provided a reasonable explanation for his failure to apply for a public defender, including a lack of transportation,

the mistaken belief that he could not request counsel after a certain proceeding had taken place, the death of the victim (his girlfriend), and a child custody dispute. Third, Wood never requested a continuance of trial as delay tactic, as compared to the other cases cited *supra*. He only requested a delay of his arraignment hearing, which was denied by the court. Additionally, unlike the cases cited above, here, Wood was not uncooperative or belligerent with counsel. In fact, the record demonstrates he never even met with counsel, court-appointed or otherwise, before he was convicted. Moreover, the record does not reveal any inquiry with the Public Defender's Officer regarding the purported incident between Wood and the receptionist.

Furthermore, we emphasize several unique facets of this case. First, the charges Wood faced subjected him to a term of imprisonment, and he was, in fact, sentenced to a minimum of one year in state incarceration. Second, even though the facts of this case may be simplistic, the legal issues are complex in nature, and included the death of the victim who had recanted her police statement at the preliminary hearing and the introduction of possible hearsay evidence with respect to Richmond's testimony. While the trial court takes issue with Wood's mistaken belief that the charges and the trial could not proceed without the victim's appearance as well her recantation statements, it is not unreasonable for a lay person to be under the same misguided impression, and therefore, the need for counsel's advice would have been indispensable. Consequently, we conclude the trial court erred in

finding Wood forfeited his right to counsel. In the interests of justice, and apparent denial of Wood's constitutional right to counsel, we are compelled to vacate the judgment of sentence and remand for further proceedings.[15]

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Emeritus Bender joins this memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017

---

[15] Based on the nature of our disposition, we need not address Wood's remaining claims regarding the sufficiency and weight of the evidence supporting his conviction.